IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Cr. No. 05-137T |
| | ) | |
| DOMINGO GONZALEZ | ) | |

GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENDANT'S PRETRIAL MOTIONS

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Adi Goldstein, Assistant U.S. Attorney, and submits this consolidated response to Defendant Gonzalez's Motion to Sever Counts, Motion to Sever Defendants, Motion for a Bill of Particulars, and Motion for 404(b) Evidence. For the reasons stated in the attached Memorandum of Law and Authorities: (1) the Government submits that Defendant's Motion to Sever Counts and Defendants should be denied as moot; the Government does not intend to offer any 404(b) evidence at this time, and recognizes its obligation to provide the defendant with notice should the government choose to offer 404(b) evidence; and the government agrees to provide the defendant with a bill of particulars as to Counts II and IV of the Indictment, but does not agree that a bill of particulars is required with respect to Count V.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys:

ROBERT CLARK CORRENTE
United States Attorney

ADI GOLDSTEIN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April, 2006, I caused to be sent by regular first class mail, a true copy of the within to:

Robert Mann, Esq.
Turks Head Bldg.
Providence, RI 02903

Anderson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
V. ) Cr. No. 05-137T
)
DOMINGO GONZALEZ )

MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

**I. Introduction**

Domingo Gonzalez ( "the defendant") has moved for severance of counts and defendants; for a bill of particulars, and for notice of 404(b) evidence. For the reasons set forth below, the government believes that the defendant's motions to sever count and defendant should be denied; and that his motion for a bill of particulars should be denied as it relates to Count V of the Indictment. In response to defendant's 404(b) motion, the government states that it does not intend to introduce 404(b) evidence in its case in chief.

**II. Travel of Case**

On December 14, 2005, a federal grand jury returned a five-count Indictment charging the defendant, along with Waska Pena, Eduardo Garcia, Alejandro Pujols, Cornelio Ozorio, and Christopher Garcia[1], with conspiracy to possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 846 (Count I); possession with intent to distribute more than 500 grams of cocaine 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Count II); possession with intent to

[1]Christopher Garcia's true name appears to be Christopher Zavala Maya. However, he will be referred to as Christopher Garcia throughout for the sake of consistency with other court documents.

distribute more than 100 grams of heroin,[2] in violation of 21 U.S.C. C841(a)(1) &(b)(1)(B) (Count III); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) &(b)(1)(C) (Count IV); and, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count V). The defendant is named in Counts I, II, IV, and V of the Indictment.

Defendant was arraigned on December 16, 2005 and entered a plea of not guilty. He has persisted in that plea and is presently scheduled to go to trial on April 18, 2006. To date, all the other defendants have changed their pleas to guilty or have signed plea agreements indicating their intention to do so.[3]

**III. Facts**

At trial, the government expects the evidence to show that, on or about December 11, 2005, the defendant, together with Christopher Garcia, drove to Providence from Lawrence, Massachusetts, in order to deliver two kilograms of cocaine to Waska Pena. The evidence will show that Alejandro Pujols arranged the delivery. The evidence will also show, that Pena arranged to sell one of the kilograms to Cornelio Ozorio as soon as the cocaine delivery arrived.

Between September and December of 2005, the DEA was conducting an investigation of

---

[2]Waska Pena is the only defendant named in this count.

[3]On February 10, 2006, Ozorio pleaded guilty to Counts I & II of the Indictment. On March 24, 2006, Pujols pleaded guilty to Counts I & II of the Indictment. On March 30, Eduardo Garcia pleaded guilty to Counts I & II of the Indictment. On April 5, Pena pleaded guilty to Counts I, II and III of the Indictment. On March 13, 2006, the government filed Christopher Garcia's plea agreement with the Court. Garcia's counsel has written the Court a letter dated March 31, 2006, in which he confirmed Garcia's intention to plead guilty to Counts I, II, and IV of the Indictment. Pursuant to the plea agreement, the government has agreed to dismiss Count V of the Indictment if the defendant continues to demonstrate his acceptance of responsibility through sentencing. Garcia's change of plea hearing is presently scheduled for April 10, 2006.

Waska Pena's drug trafficking activities. On October 31, 2005, the DEA obtained court-authorization to intercept the wire communications of Waskar Pena and others over Pena's T-Mobile cellular telephone, (401) 499-7936. That authorization was renewed after thirty days. In addition, on December 8, 2005, the DEA obtained authorization to intercept Pena's Nextel cellular telephone, (401) 427-5235.

On December 10 and 11, 2005, the DEA intercepted a series of calls that indicated that Pena was expecting a delivery of cocaine from Lawrence, Massachusetts. Calls intercepted between Pujols and Pena indicate that Pujols was brokering the purchase of three kilograms of cocaine from "his guys" in Lawrence. The three kilograms turned into two after Pujols examined one of the kilos and determined that it was of poor quality. During the early afternoon hours of December 11, Pujols called Pena and informed him that he was on his way, and that the guys from Massachusetts were on their way. As a result, Pena communicated numerous times with Cornelio Ozorio, in order to line up the sale of the one kilogram of cocaine.

At about 3:29 p.m. on December 11, 2005, surveillance observed Pena arrive at 234 Gallatin Street in a blue Chrysler mini-van, RI Registration DU-722. Pena was followed by a white Honda bearing MA registration 24YX60. The Honda was occupied by three individuals. One of the passengers, who was later identified as Pujols, exited the vehicle and walked into 234 Gallatin Street with Pena. The white Honda then drove away. At approximate 3:41 p.m., Pena and Pujols left 234 Gallatin Street in Pena's mini-van. Surveillance observed Pena pull onto Elmwood Avenue. Surveillance observed Pujols speaking on his telephone. Following the arrest of Pujols and Gonzalez, and the seizure of their cellular telephones, it was determined that Pujols and Gonzalez communicated with each other at that time. Surveillance observed Pena's mini-van make a U-turn on Elmwood Avenue. Surveillance then observed a Lincoln Town Car bearing

MA registration 77NN35 pull behind Pena's mini-van and follow Pena to 234 Gallatin Street. The Lincoln Town Car was registered to Christopher Garcia at 42 Spruce Street, Matheun, MA. Pena parked his vehicle on Gallatin Street and the Lincoln was observed pulling into the driveway of 234 Gallatin Street. Surveillance observed two males exit the Lincoln and enter 234 Gallatin Street. These two males were later identified as Christopher J. Garcia and Domingo A. Gonzalez.

At 3:52 p.m., surveillance observed a blue Oldsmobile bearing RI registration PC-894, park on Ruskin Street, which is directly across from 234 Gallatin Street, and the driver, who was later identified as Cornelio Ozorio, was observed entering 234 Gallatin Street.

At this point, agents were instructed to execute the search warrant at 234 Gallatin Street. As agents arrived, they encountered Ozorio leaving 234 Gallatin Street and getting into Pena's mini-van. Task Force Agents Joseph Colanduono and Robert Enright stopped Ozorio and conducted a pat-down of his person. As they did so, a plastic wrapped kilogram of cocaine fell from under Ozorio's coat.

Agents then entered 234 Gallatin Street, which is a three-story, single family home, with a basement. On the first floor of the house, agents encountered Eduardo Garcia, Diane Guzman, and Guzman's five minor children, and Kelvin Disla. In the basement, agents encountered Pena, Christopher Garcia, and Alejandro Pujols. In plain view on the basement floor, agents located a kilogram of cocaine, a heat sealer, a digital scale, and packaging materials. After searching the basement for some time, agents located the defendant hiding under a rug and other items. After a brief struggle with the police, Gonzalez was arrested.

The Lincoln Town Car that was in the driveway of 234 Gallatin Street was also searched. Agents located a hidden compartment inside the back of the front passenger seat. The hidden

compartment was open at the time. It contained approximately 100 grams of cocaine along with a loaded .22 caliber Taurus handgun (serial number AXG32254). A digital scale was located inside the vehicle as well.

**IV. Motion for Bill of Particulars**

Defendant has moved for a bill of particulars with respect to Count II and Count IV of the Indictment. The defendant is correct in surmising that Count II of the Indictment refers to the two kilograms of cocaine that were carried into 234 Gallatin Street by Garcia and the defendant. These two kilograms were seized from the basement of 234 Gallatin Street and from the person of Cornelio Ozorio. By contrast, Count IV refers to that 100 grams of cocaine that was seized from the hidden compartment inside the Lincoln Town Car. Furthermore, while the cocaine charged in Count II could be said to be either actually or constructively possessed by all six defendants, the cocaine in Count IV of the Indictment could only be attributed to Garcia and Gonzalez. Accordingly, Count IV is not a lesser included offense in Count II, and is properly charged in a separate count.

In the case of indictments involving possession with intent to distribute controlled substances, the courts have held that it is not multiplicitous to charge two counts of possession with intent to distribute when drugs are contemporaneously located in two separate locations. United States v. Johnson, 977 F.2d 1360, 1374 (10 Cir. 1992) (two stashes of metamphetamines next to each other charged separately); United States v. Blakeney, 753 F.2d 152 (D.C. Cir. 1985) (marijuana); United States v. Maldonado, 849 F.2d 522 (11th Cir. 1988) (cocaine). In each case, each of the multiple counts required proof of a different fact, such as time or location. The First Circuit has ruled that it is not multiplicitous to charge possession with intent to distribute and distribution even when the underlying facts show that the distribution or possession occurred

within a short time span of each other. United States v Rodriguez-Cardona, 924 F.2d 1148 (1st Cir. 1991); United States v. Tejada, 886 F.2d 483 (1st Cir. 1989).

The Defendant has also moved for a bill of particulars with respect to Count V. Defendant would like the government to specify whether the 18 U.S.C. § 924(c) Count relates only to Count II or only to Count IV. Notably, the defendant has not cited any law that would require the government to make such an election. To obtain a conviction on Count V of the Indictment, the government need only prove that the gun was possessed in furtherance of a drug trafficking crime. There is no requirement that the government tailor its theory of the case as to argue –absurdly – that the gun was possessed only in connection with the two kilograms of cocaine that are the subject of Count II, or alternatively in connection with the 100 grams of cocaine that remained in the car, which are the subject of Count IV. Indeed, the government believes that the gun was possessed in connection with both. See.e.g., United States v. Finley, 245 F.3d 199 (2nd Cir. 2001) ("where a defendant is charged with the continuous constructive possession of a firearm in furtherance of a sale of a part of quantity of narcotics possessed, coupled with the continued possession fo the remainder immediately following the sale, Congressional intent is not sufficiently clear to compel [the imposition of consecutive § 924(c) sentences]"); United States v. Johnson, 25 F.3d 1335, 1338 (6th Cir. 1994) ( possession of one or more firearms in conjunction with predicate offenses involving simultaneous possession of different drugs should constitute only one offense under § 924(c) ) .Accordingly, defendant's motion for a Bill of Particulars as to Count V should be denied.

**V. Motion to Sever Counts**

Defendant's motion to sever Counts I and II from Counts IV and V of the Indictment

should be denied as moot. As stated in defendant's memorandum in support of defendant's motion, "the assumption underlying the motion is that there are only two remaining defendants, Waskar Pena and the defendant." As Pena pleaded guilty to the Indictment on April 5, 2005, and the defendant is the only remaining defendant in the case, there is no longer an issue. Accordingly, the government believes that defendant's severance motion is moot.

Furthermore, insofar as the defendant is urging severance of Counts I and II from Counts IV and V, on other grounds, Def. Br. 3, those grounds are not specified in defendant's memorandum, nor is there any law cited by the defendant to support such severance. The counts were properly joined under Fed. R. Crim. P. 8. The evidence concerning Count I, II, IV and V is, in large part, one and the same. The evidence will focus on December 10-11, 2005. The evidence will show that Garcia and Gonzalez transported over two kilograms of cocaine to Providence. The cocaine was secreted in a hidden compartment in Garcia's vehicle. Garcia and Gonzalez brought two kilograms into Pena's house. 100 grams of cocaine and a gun remained in the vehicle. The telephone conversations intercepted on December 10 and 11, and phone records obtained for that period of time, demonstrate that Pujols orchestrated the delivery with Gonzalez. Accordingly, there is no basis for severance.

**VI. Motion to Sever Defendants Garcia and Gonzalez**

Defendant's motion to sever defendants Garcia and Gonzalez should be denied as moot. As of now, Garcia has indicated his intention to plead guilty by signing a plea agreement. Garcia's change of plea hearing is scheduled for April 10, 2006. In the event that Garcia's change of plea is rejected, the government requests the Court's permission to supplement its response to defendant's motion to sever.

**VII. Motion for Notice of 404(b) Evidence**

At this time, the government does not anticipate the introduction of any 404(b) evidence against the defendant in the government's case in chief. The government is aware of its obligation to provide the defendant with 404(b) notice.

**VIII. Conclusion**

For the reasons set forth above, the government believes that defendant's motions for severance of counts and defendants should be denied and that defendant's motion for a bill of particulars for Count V of the Indictment should be denied. The government has otherwise responded to defendant's motion for a bill of particulars on Counts II and IV of the Indictment and for 404(b) evidence, such that no further ruling is required.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys:

ROBERT CLARK CORRENTE
United States Attorney

ADI GOLDSTEIN
Assistant U.S. Attorney