UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 05-137-06T |
| | ) | |
| DOMINGO GONZALEZ | ) | |

DEFENDANT'S RESPONSE TO PRESENTENCE INVESTIGATION

## I. PARAGRAPH 13 OF THE PSI

The defense objects to paragraph 13 of the PSI which seeks to add two points for obstruction of justice pursuant to U.S.S.G. §3C1.1. The basis for this two level increase is simply put forth in paragraph 13, which states: "The government advised that Mr. Gonzalez's testimony at trial was untruthful. Therefore, the enhancement applies."

The defense submits that more is required to merit this enhancement. First, untruthfulness is not sufficient to trigger the enhancement. What is required is perjury or suborning or attempting to suborn perjury. There is a broad generalization from the government, cited in paragraph 13, that the defendant's testimony was untruthful, but there is no specification of precisely what testimony is alleged to constitute perjury. In paragraph 11, the prosecution version, there is a similarly broad, allegation. The report states, "The government's position is that the defendant's version of events is completely untruthful." These general, unspecific allegations, are insufficient. For these reasons, the enhancement should be denied.

At the very minimum, the defendant is entitled to know specifically what testimony the government alleges was perjury. See United States v. Meada, 408 F.3d 14,

24-25 (lst Cir. 2005). First, knowledge of what testimony is specifically alleged to constitute perjury is required in order to respond to the allegation that the testimony was perjury. Second, this knowledge of the specific testimony which is alleged to be perjury is required to determine if the testimony, even if it is perjury, satisfies the other requirements of U.S.S.G §3C1.1. Specifically, in order to warrant the enhancement, the government must prove the alleged perjury was related to "(i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense…." U.S.S.G. §3C1.1.

U.S.S.G. §6A1.3 supports the defendant's claim that he is entitled to notice of the specific allegations against him which form the basis of the request for a perjury enhancement. That provision of the guidelines states that, "When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." A defendant is not able to respond to an allegation of perjury without knowledge of the allegations.

Further support for the defendant's position comes from a consideration of the federal perjury statute, 18 U.S.C. §1621 and the guidance of case law based on that statute. The defendant realizes that the instant proceeding is not an independent perjury prosecution, but rather involves a claim that the defendant committed perjury and hence there should be an enhancement pursuant to U.S.S.G. §3C1.1. The defenses available to a defendant in a perjury prosecution remain available to a defendant contesting an enhancement under U.S.S.G. §3C1.1. A defendant has a right to know precisely what

statement in response to what question is alleged to constitute perjury. In Bronston v. United States, 409 U.S. 352 (1973), the United States Supreme Court said:

> Thus, we must read § 1621 in light of our own and the traditional Anglo-American judgment that a prosecution for perjury is not the sole, or even the primary, safeguard against errant testimony. While "the lower federal courts have not dealt with the question often," and while their expressions do not deal with unresponsive testimony and are not precisely in point, "it may be said that they preponderate against the respondent's contention." United States v. Norris, 300 U.S., at 576. The cases support petitioner's position that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner -- so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.

Bronston v. United States, 409 U.S. 352, 360 (1973). In light of this burden placed on the government, the defense is entitled to have notice of the specific statements which are alleged to constitute perjury.

## II. PARAGRAPHS 16 AND 17 OF THE PSI

The defense objects to part of the calculation in paragraph 16 and the specific offense characteristic in paragraph 17 on the grounds, as set forth below. Paragraph 16 calculates a base offense level of 28, based on the seizure of 2.094 kilograms of cocaine. Paragraph 16 explicitly states that this total included the 96.9 grams found in the compartment of the car. This cocaine was the basis of Count IV of the indictment. The defendant was acquitted of this count. Without the addition of this 96.9 grams, the total amount of cocaine seized is under 2 kilograms and the base offense level is 26, not 28. Paragraph 17 adds 2 points to the offense level based on the defendant's possession of a

dangerous weapon. The paragraph specifically identifies the weapon as the firearm present in the hidden compartment of the car in which the defendant was a passenger. This weapon was the basis for Count V of the indictment, charging possession of a firearm in furtherance of a drug trafficking crime. The defendant was acquitted of this count.

As to each of these two paragraphs, an extra two points is added (for a total of 4 points) based on conduct of which the defendant was acquitted. The first objection to including the points based on this conduct is that the government is not able to prove the defendant possessed either the cocaine or the gun found in the compartment, even by a preponderance of the evidence. The finding of the jury as to these two counts determines that the government has not proven this conduct by proof beyond a reasonable doubt. At the very minimum, the government retains the burden of proving this conduct by a preponderance of the evidence. The defense submits that even using this standard, the government's case fails. The same arguments the defense advanced during the trial as to why there should be an acquittal as to Counts IV and V apply in this sentencing argument. The defense summarizes those arguments below:

1) According to the testimony of at least one law enforcement officer, the compartment where the drugs and gun were hidden, known as the "hide" was not visible to the naked eye.

2) This was not the defendant's car.

3) The defendant's fingerprints were not found on the gun and the Providence Police were not asked to print anything else.

The evidence simply does not connect the defendant to the gun and drugs found in the hidden compartment.

This case may be contrasted with a case in which the Court of Appeals held that even though a defendant was acquitted of the same weapons charge as in this case, the Court upheld the addition of two points for weapon possession pursuant to U.S.S.G.§2D1.1(b)(1). United States v. Mocciola, 891 F.2d 13 (lst Cir. 1989). In that case, the defendant testified that he did possess a pistol, but that it had nothing to do with his drug activity. Id. at 14. The police also found three other weapons in the defendant's bedroom, where the police discovered the drugs. Id. at 14, 17. The facts in that case are far different from the facts in this case, in which the defendant has consistently denied possession of and knowledge of the contents of the hidden compartment, including the drugs and gun therein.

## III. RESPONSE TO PARAGRAPHS 33 AND 36

The defense simply notes the correct spelling of the defendant's brother's name is Severiano and his daughter's name is Jeanelle.

## IV. RESPONSE TO PARAGRAPH 59- FACTORS THAT MAY WARRANT DEPARTURE

The defense intends to file a motion seeking a sentence outside the guideline range. Among the factors the defense will urge as a basis for a downward departure is the status of the defendant as an alien, and the consequences that result from that status.

V. THERE SHOULD BE AN ADJUSTMENT UNDER U.S.S.G. §3B1.2

Pursuant to U.S.S.G. §3B1.2 a defendant's role in an offense may be the basis for a decrease in the offense level. The defense submits that even based on the government's version of what transpired in this case, there should be a decrease in the offense level based on the defendant's role in the offense. Despite an extensive investigation in this multi-defendant case, even by the government's version, the involvement of this defendant appears to be very limited. He was not observed in any surveillance prior to the day of the arrest. He was a passenger in a car, not owned by him, when he arrived at the location of the arrest. In the government's closing, the government argued the import of the telephone calls with the defendant, but even accepting the government's argument, the calls are probative of guilt, but do not undercut the view of the defendant as having a limited role in the transactions. He appears, at worst, as person on the telephone, taking and relaying messages.

The First Circuit has set forth the standard for a role in the offense adjustment. The Court has stated:

> A defendant seeking a minor-role adjustment bears the burden of showing that he is (1) less culpable than most other people involved in the particular offense for which he was convicted and (2) less culpable than most other perpetrators of comparable crimes. See United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005).

United States v. Santiago-Salazar, 2006 U.S. App. LEXIS 19357 (1st Cir. 2006). The defendant submits that among the people involved in this offense, his role appears considerably less significant than the others in this case. He does not have any drugs on him. He does not have any weapons on him. There is no surveillance identifying the

defendant until the actual day of the arrest. Even his telephone communications are limited in the time period that is covered.

In assessing the defendant's role vis-à-vis "other perpetrators of comparable crimes" the opinion of the Court of Appeals in United States v. Mateo-Espejo, 426 F.3d 508, 512-13 (lst. Cir. 2005) provides guidance. In that case, the Court said:

> For example, in United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000), we descried no clear error in the sentencing court's denial of a minor role adjustment where the defendant had performed only "menial tasks" such as unloading the drugs and conducting surveillance. Id. at 149. So too in United States v. Gonzalez-Soberal, 109 F.3d 64 (1st Cir. 1997), we discerned no clear error in the sentencing court's denial of a downward role-in-the-offense adjustment on the assumption that the defendant had been no more than a courier. Id. at 73-74. And in United States v. Cepeda, 907 F.2d 11 (1st Cir. 1990), we found no clear error in the sentencing court's denial of a minor role adjustment where, as here, the defendant delivered drugs and collected money. Id. at 12. Silhouetted against this precedential backdrop, the [**12] decision of the court below denying the appellant's request that [*513] he be classified as a minor participant cannot be characterized as clearly erroneous. Cf. United States v. Gonzalez, 363 F.3d 15, 18 (1st Cir. 2004) (per curiam) ("Even if [defendant's] role were limited to that of driver, that would not necessarily, without more, prove that he deserved a role adjustment.").

United States v. Mateo-Espejo, 426 F.3d 508, 512-513 (1st Cir. 2005), cert. denied, 126 S.Ct. 1414 (2006). In this case, the defendant was not observed loading or unloading drugs or conducting surveillance. He was not even the driver of the vehicle involved. There is no evidence he either delivered drugs or collected money. In general the time and scope of the defendant's involvement in this case, even accepting the government's account of what transpired, was very limited, warranting a downward adjustment of 2 to 4 points pursuant to U.S.S.G. §3B1.2.

VI. THE STANDARD OF PROOF IN THIS PROCEEDING

The defense submits in this section that the standard of proof for facts to be considered by the Court in the proceeding, a sentencing proceeding, should be beyond a reasonable doubt. In making this argument, the defense essentially asks this Court to adopt the reasoning of Judge Gertner in United States v. Pimental, 367 F. Supp.2d 143 (D. Mass. 2005). In that case, the Court addressed a government request to consider acquitted conduct in a sentencing.[1] The Court first acknowledged United States v. Watts, 519 U.S. 148 (1997), which held that when a defendant has been acquitted of a count, the conduct which was the basis of that count may still be considered in sentencing on a count on which the defendant was convicted. The Court then opined on the effect of recent cases on United States v. Watts. The Court said:

> United States v. Booker substantially undermines the continued vitality of United States v. Watts n11 both by its logic and by its words. It makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S.Ct. 2531, 2538 (2004), and also conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing. [Footnote omitted]

United States v. Pimental, 367 F. Supp. at 150.

The Court went on to say:

> To consider acquitted conduct trivializes "legal guilt" or "legal innocence" -- which is what a jury decides -- in a way that is inconsistent with the tenor of the recent case

[1] The acquitted conduct was conduct of both the defendant and his wife. The question of considering acquitted conduct of a co-defendant is not the issue in this case, but the issue of acquitted conduct of the defendant is the same as in United States v. Pimental, 367 F.Supp.2d 143 (D. Mass. 2005).

> law. See Gertner, Circumventing Juries, 32 Suffolk U. L. Rev. at 436. After Apprendi, the focus was on whether a given sentence exceeded what the jury verdict (or plea) authorized. n18 [Footnote omitted]

United States v. Pimental, 367 F. Supp at 152.

The Court goes on to describe the evolution of sentencing from a pre-guidelines era to a post-Booker environment, more than once characterizing the present sentencing processes as a "hybrid regime." The Court notes that even if the Sixth Amendment right to a jury trial is no longer "directly implicated" because the guidelines are not mandatory, the Fifth Amendment's due process requirement is applicable to fact determinations that are essential to sentencing. Id. at 153. Finally, the Court concludes:

> We cannot have it both ways: We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.

United States v. Pimental, 367 F. Supp. 2d at 154.

Based on the opinion in United States v. Pimental, the defense submits that in making findings of fact due process requires that the Court make such findings on a standard of proof beyond a reasonable doubt. The defense submits that this is true of all findings of fact to be made by this Court in the sentencing process, including the findings as to the issues upon which there is dispute, as set forth in this memorandum, to wit, 1) the question of perjury by the defendant; 2) the amount of cocaine attributed to the defendant; and 3) whether or not the defendant possessed a weapon. As outlined in

United States v. Pimental, the argument has an even greater force with respect to findings of fact about which the jury has already made a decision. United States v. Pimental, 367 F. Supp. 2d at 152. The defense notes that at one point in the opinion in United States v. Pimental there is a curious comment to the effect that "all facts are not equal today,…" followed by an apparent differentiation between facts that constitute a crime and those that enhance a conviction. Id. at 153. What is particularly curious about the reference is the example of the presence of a gun which is said to enhance a crime, but not be a separate crime, when in fact in this case the gun was the basis for a separate count, on which the defendant was acquitted. The gun clearly can be the basis for a separate criminal charge. The defense simply notes this passage in the Pimental opinion. It is at most dicta to the opinion.

Domingo Gonzalez
By his Attorney,

/s/Robert B. Mann____________
Robert B. Mann #153
Mann & Mitchell
610 Turks Head Place
Providence, RI 02903
(401) 351-5770

**CERTIFICATION**

I hereby certify that on this 22nd day of November, 2006, I did send a true copy of the within document by electronic means (ECF) to:

Adi Goldstein, AUSA
Office of the United States Probation Officer

/s/Robert B. Mann
Robert B. Mann #0153
Mann & Mitchell
610 Turks Head Place
Providence, RI 02903
(401) 351-5770
rmann@conversent.net